[No. A052875. First Dist., Div. Two. Apr. 10, 1992.]

THOMAS KEVIN McKINNEY, Plaintiff and Respondent, v.
DEPARTMENT OF MOTOR VEHICLES, Defendant and Appellant.

## COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, E. Eugene Hill, Assistant Attorney General, Jose R. Guerrero and Kim M. Settles, Deputy Attorneys General for Defendant and Appellant.

Knutsen & Smithwick and Thomas Knutsen for Plaintiff and Respondent.

## OPINION

SMITH, J.—Pursuant to California's new "Administrative Per Se" law (Veh. Code, § 13353.2 et seq.), the Department of Motor Vehicles (DMV) suspended the driver's license of Thomas Kevin McKinney for one year upon a determination that he was arrested for operating a motor vehicle under the influence of alcohol and that he was driving with a blood-alcohol level of .08 percent or more. After an administrative hearing, the hearing officer sustained the suspension.

McKinney petitioned for a writ of mandate in superior court. The court granted the writ on the basis that there was no evidence at the hearing as to what time McKinney was observed driving under the influence of alcohol. We disagree with the learned trial judge and find there is sufficient evidence to support the suspension.

### BACKGROUND

On October 21, 1990, at 2:25 a.m., McKinney was arrested by California Highway Patrol Officer David P. Raleigh for driving under the influence of alcohol. The officer's sworn statement noted that McKinney's vehicle was

straddling the southbound number 3 and 2 lanes of U.S. Highway 101 at 60 miles per hour. On a preprinted declaration form provided by the DMV, the officer indicated that McKinney exhibited the following symptoms of intoxication: slurred speech, bloodshot/watery eyes, odor of alcohol, unsteady gait and poor performance of field sobriety tests.

Officer Raleigh administered a breath test to McKinney at 3:45 and 3:46 a.m. at the main jail in Redwood City. The intoxilyzer printout disclosed blood-alcohol readings of .129 and .128 percent, respectively.

Pursuant to Vehicle Code[1] section 13353.2, McKinney was served with a notice of suspension. He requested a formal hearing on the issue of whether the evidence supported the suspension of his license. At the hearing, the hearing officer received into evidence Officer Raleigh's sworn statement, a printout of the breath test results and a DMV report on McKinney's driving record.[2]

McKinney did not appear at the hearing, nor did he offer any evidence of his own. Instead, his lawyer interposed a number of evidentiary objections to the officer's statement and the intoxilyzer results. The hearing officer overruled the objections, found that McKinney had violated section 13353.2 and upheld the suspension.

A petition for writ of mandate was filed in superior court, seeking to overturn the DMV's decision. The court issued the writ on the stated ground that the suspension was not supported by the evidence because the hearing officer had "no evidence before him as to what time the driving in this case occurred." The DMV appeals from the minute order[3] granting the writ.

APPEAL

I

The suspension in this case was effectuated pursuant to the provisions of legislation enacted in 1989 directing and enabling the DMV to suspend the

---

[1]Unless otherwise indicated, all further statutory references are to the Vehicle Code.

[2]McKinney's driving record was relevant on the issue of the length of his suspension. Because he had been convicted of driving under the influence within the last seven years, his license was suspended for one year. (§ 13353.3, subd. (b)(2).)

[3]No judgment was ever rendered and the appeal is purportedly taken from the nonappealable minute order. In the interests of justice and consonant with routine practice, we will amend the order to incorporate a judgment granting the writ and deem the notice of appeal as applying to that judgment. (See *Buehler* v. *Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 731, fn. 1 [274 Cal.Rptr. 14]; *Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488, 493, fn. 3 [220 Cal.Rptr. 818, 709 P.2d 837].)

driver's license of any person operating a motor vehicle with a blood-alcohol level of at least .08 percent (the level was lowered from .10 percent by a 1990 amendment, see Stats. 1990, ch. 431, § 4, No. 9 West's Cal. Legis. Service, p. 1536). Under the statutory scheme, if chemical tests show that a person arrested for drunk driving has a blood-alcohol level (BAL) in excess of this amount the arresting officer or the DMV must serve the person with a notice of suspension of his driver's license, effective 45 days from the date of service. (§§ 13353.2, 23158.5.) The arrestee has the right to request an administrative hearing (§ 13558) and the hearing officer's ruling is then subject to judicial review (§ 13559). (See generally *Peretto* v. *Department of Motor Vehicles* (1991) 235 Cal.App.3d 449, 452-453 [1 Cal.Rptr.2d 392].)

"Administrative per se" laws such as this have been enacted in 23 states including California, and ours has recently been upheld against a due process challenge by Division Three of this court. (*Peretto* v. *Department of Motor Vehicles, supra,* 235 Cal.App.3d at pp. 459-462.)

At the administrative hearing below, the key item of evidence was the sworn statement of Officer Raleigh, completed on a DMV form designed to facilitate enforcement of the new law. In ruling on the petition for writ of mandate, the trial court's task was to determine, exercising its independent judgment, whether the hearing officer's decision was supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subd. (b); *Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 575-576 [2 Cal.Rptr.2d 249].)

Here, the trial court found that the administrative order was not supported by the weight of the evidence because the hearing officer had no evidence of the time that McKinney was observed *driving* the vehicle. In so ruling, the court was apparently convinced by defense counsel's argument that there was an irremediable deficiency in the evidence because the officer's sworn statement indicated only the time of arrest and not the time that the driving occurred.

We note at the outset that the entire problem in this case occurred because of sloppy draftsmanship in the form designed by the DMV for the officer to fill out. That form states "I had reasonable cause to believe that on _____ at _____ AM/PM in _____ the above named driver *was arrested* for driving a motor vehicle under the influence in violation of Section 23152 or 23153 CVC." (Italics added.) The preprinted statement is illogical. The officer does not have "reasonable cause to believe" that the person he stopped was arrested. The officer presumably knows for a fact whether he arrested the driver. Had the form accurately

tracked the statutory language of section 13353.2 it would have stated that at a specified date and time the officer had reasonable cause to believe the driver *was driving* under the influence of alcohol. The form could then have indicated elsewhere that the driver was placed under arrest. If such had been the case, there would have been no doubt in this case as to when the driving occurred.[4]

Nevertheless, the flaw in the form did not create a fatal gap in the evidence. The statement declares that McKinney was observed straddling two lanes of southbound 101 between the Holly and Whipple Avenue off ramps while travelling at 60 miles per hour. Officer Raleigh further states that McKinney's vehicle was stopped at 2:25 a.m. on southbound 101 south of Whipple Avenue. According to the statement, there was no accident involved, nor did it list any other intervening event which might have created a lengthy interval between the officer's observation and the stop.

■ The hearing officer was not constrained to consider only direct evidence but could draw inferences and deductions of fact from the facts before him. (Evid. Code, § 600, subd. (b).) In the absence of any indication that there was a significant delay between the observation and the stop, and in view of the proximity between where the unusual driving was observed and the point where McKinney was stopped and arrested, the hearing officer could rationally infer that McKinney was driving in an inebriated condition shortly prior to the 2:25 a.m. arrest. The trial court erred in finding that, without the officer's express declaration as to the time of driving, there was insufficient evidence to support the suspension. Since this was the sole basis for the court's decision, the judgment must be reversed.

II

McKinney also argues, as an alternative ground for affirming the trial court's decision (see Code Civ. Proc., § 906), that the two items of evidence upon which the DMV relied to establish his BAL, the officer's sworn statement indicating a breath test result of .128 and .129 and the intoxilyzer printout showing the same numbers, were inadmissible because they were hearsay and introduced without proper foundation. McKinney contends that the DMV had the burden to establish both the scientific reliability of the breath test (the so-called *Kelly-Frye* rule) and that the test was administered properly in this case.

---

[4]We are informed by the Attorney General that the DMV has since amended its forms to clear up the ambiguity.

■ McKinney's attack on the admissibility of the BAL readings is without substantive merit. Officer Raleigh's handwritten entries recording the results of the breath test was not, as McKinney argues, hearsay. The officer himself administered the breath test and the entries therefore constituted his firsthand observations of the intoxilyzer readings. For this reason, our decision in *Imachi v. Department of Motor Vehicles* (1992) 2 Cal.App.4th 809 [3 Cal.Rptr.2d 478] (*Imachi*) is not controlling, since there the arresting officer simply reported seeing a printout of a test administered by someone else.

We reject summarily McKinney's assertion that the DMV was compelled to lay a *Kelly-Frye* foundation (*People v. Kelly* (1976) 17 Cal.3d 24 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye v. United States* (D.C. Cir. 1923) 293 F. 1013 [54 App.D.C. 46, 34 A.L.R. 145]) as a condition precedent for the admission of the intoxilyzer test results. The test is hardly a new scientific method of proof. The validity of blood, urine and breath tests, when properly administered, has been accepted for more than 30 years. (See *People v. Municipal Court (Sansone)* (1986) 184 Cal.App.3d 199, 201 [228 Cal.Rptr. 798]; *People v. Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *People v. Conterno* (1959) 170 Cal.App.2d Supp. 817, 824 [339 P.2d 968]) and has been a legislatively recognized means of measuring BALs since 1966. (*Imachi, supra,* 2 Cal.App.4th at p. 817, fn. 6; see former § 13353, added by Stats. 1966, 1st Ex. Sess. 1966, ch. 138, § 1, pp. 634-636.)

Nor do we agree with McKinney's suggestion that the DMV bears the burden of proving, at every administrative suspension hearing, that the test was properly administered and that the machine was in working order. Chemical tests to determine BAL's at the time of arrest are performed in accordance with standards established by the Health and Safety Code (Health & Saf. Code, § 436.51) and administrative regulations promulgated by the Department of Health Services (17 Cal. Code Regs., § 1215 et seq.). Officer Raleigh was identified on the report as the operator of the test and could have been subpoened to testify regarding the manner in which it was given. (§ 23158, subd. (c).) Given the statutory presumption that official duty has been regularly performed (Evid. Code, § 664), the burden was on the person challenging the result, here McKinney, to show that there was some irregularity in the administration of the test such as would bring into question the reliability of the BAL readings. (See *Snelgrove v. Department of*

*Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1375 [240 Cal.Rptr. 281] (*Snelgrove*).) He failed to meet that burden.[5]

## III

■ Under the administrative per se law, the hearing officer was bound to uphold the suspension if he found by a preponderance of the evidence that (1) the arresting officer had reasonable cause to believe McKinney was driving under the influence of alcohol; (2) McKinney was placed under arrest; and (3) his BAL was at least .08 percent. (§ 13557, subd. (b)(2).) The first two elements were undisputedly satisfied by Officer Raleigh's sworn statement, which was admissible both as an official record of the DMV (§§ 23158.2, 14104.7; *Mackler* v. *Alexis* (1982) 130 Cal.App.3d 44, 51-55 [181 Cal.Rptr. 613]) and under the public employee records exception to the hearsay rule. (Evid. Code, § 1280; *Snelgrove, supra*, 194 Cal.App.3d 1364, 1374-1375.) The third element was abundantly established, both by the breathalyzer test readings and by the arresting officer's personal observations.[6] The administrative suspension was supported by the weight of the evidence; the trial court erred in granting the writ.

---

[5]*Coombs* v. *Pierce, supra*, 1 Cal.App.4th 568, does not dictate a contrary result. In that case, the driver produced evidence that the county criminalistics laboratory was not licensed by the state to use the instrument which tested his BAL. The applicable administrative regulations required all laboratories to have a valid license for their testing equipment. The appellate court held that, in view of the lack of a valid, state-required license for the instrument, the burden shifted to the DMV to establish the traditional foundational prerequisites for reliability. (*Id.*, at pp. 576-580; see *People* v. *Adams* (1976) 59 Cal.App.3d 559, 561 [131 Cal.Rptr.190]).

By contrast, McKinney introduced no evidence which brought into question the reliability of the intoxilyzer used or the manner in which the test was performed.

[6]While a chemical test result is usually relied upon by the hearing officer as decisive, we point out that it is not the only means of establishing that a driver's BAL was .08 or more.

As our Supreme Court has noted, what the Legislature has prohibited is *driving* a vehicle with a blood-alcohol rate over the proscribed limit, not driving when a *chemical test* shows it to be over the limit. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10 [198 Cal.Rptr. 145, 673 P.2d 732].) Thus, both parties are free to introduce circumstantial evidence bearing on whether the driver's BAL exceeded the permissible level. (*Ibid.*) "Evidence regarding the manner in which a defendant drove, performed field sobriety tests, and behaved is *admissible and relevant* as tending to establish that he did or did not have a 0.10 [now 0.08] BAL while driving." (*People* v. *Randolph* (1989) 213 Cal.App.3d Supp. 1, 7 [262 Cal.Rptr. 378], italics added.)

The hearing officer below had before him the California Highway Patrol officer's observations that McKinney was driving in an erratic and dangerous manner, that he had bloodshot and watery eyes, an odor of alcohol, an unsteady gait and slurred speech. Officer Raleigh further noted that McKinney exhibited poor performance on field sobriety tests. On the other hand, McKinney neither appeared at the hearing nor offered any evidence of his own. The strong circumstantial evidence that McKinney was driving while heavily intoxicated, unen-

## DISPOSITION

As amended (see fn. 3, *ante*) the order of the trial court granting the writ of mandate is reversed with directions to enter a judgment denying the writ.

Kline, P. J., and Peterson, J., concurred.

cumbered by any contrary showing, provided additional independent support for the hearing officer's ruling.