[No. A056728. First Dist., Div. Three. Dec. 9, 1992.]

STEVEN WILLIAM YORDAMLIS, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Henry G. Ullerich, Assistant Attorney General, Jose R. Guerrero and S. Michele Inan, Deputy Attorneys General, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

OPINION

CHIN, J.—

### INTRODUCTION

Frank S. Zolin, as Director of the Department of Motor Vehicles (DMV), appeals from a judgment granting a peremptory writ of mandate setting aside the suspension of respondent Steven William Yordamlis's driving privilege. The DMV contends that substantial evidence does not support the trial court's decision to overturn the suspension. We disagree. Therefore, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 8, 1991, Officer Bhatnagar of the Fremont Police Department observed Yordamlis driving erratically. After pulling Yordamlis over, Bhatnagar observed that Yordamlis smelled of alcohol and had bloodshot/watery eyes, slurred speech, and an unsteady gait.

Bhatnagar arrested Yordamlis at approximately 7:15 p.m. for violation of Vehicle Code section 23152.[1] Yordamlis elected to submit to a blood test. Based on his belief that the blood test would show a blood-alcohol concentration (BAC) of more than 0.08 percent, Bhatnagar issued Yordamlis an administrative per se order of suspension pursuant to section 13353.2, which requires suspension of the driving privilege of anyone driving with a BAC of 0.08 percent or more. Subsequent analysis of the blood sample revealed a BAC of 0.17 percent.

At the ensuing administrative hearing that Yordamlis requested, the DMV submitted Bhatnagar's sworn statement, the administrative per se suspension order, the laboratory report of the blood test results, a supplemental sworn

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

statement of another officer that also reported the blood test results, and Yordamlis's driving record. Yordamlis objected to admission of the sworn statements and the laboratory report, arguing in part that the DMV had failed to present admissible evidence of the trustworthiness and reliability of the test results and of a nexus between the time he was driving and the time he gave the blood sample. Yordamlis did not testify and presented no evidence. On this record, the administrative hearing officer upheld the suspension.

Pursuant to Code of Civil Procedure section 1094.5, Yordamlis petitioned for a writ of mandate. The superior court found that the DMV's "fundamental finding" regarding Yordamlis's "blood alcohol content at the time of driving" was "not supported by the evidence." It therefore granted the writ. The DMV now appeals.[2]

## DISCUSSION

The trial court's task in this case was to determine, using its independent judgment, whether the weight of the evidence supported the administrative decision. (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545 [7 Cal.Rptr.2d 10].) "[U]nder the independent judgment rule, the trial court must weigh the evidence and make its own determination as to whether the administrative findings are sustained." (*Petrucci* v. *Board of Medical Examiners* (1975) 45 Cal.App.3d 83, 87 [117 Cal.Rptr. 735].) The trial court has " ' "the ultimate power of decision . . . ." ' " (*Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].)

Accordingly, on appeal, we review the trial court's decision as we would review any other civil appeal. (*Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915 [80 Cal.Rptr. 89, 458 P.2d 33].) Thus, we "review the record to determine whether the trial court's findings are supported by substantial evidence. [Citations.]" (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. (*Yakov* v. *Board of Medical Examiners, supra*, 68 Cal.2d at p. 72; *Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 52 [154 Cal.Rptr. 29].) Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. (*Yakov, supra*, at p. 72.) We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. (*Merrill, supra*, at p. 915.)

---

[2]Although Yordamlis has not filed a respondent's brief, it is appropriate for us to examine the record and the DMV's briefs and reverse only for prejudicial error. (*Ruttenberg* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1277, 1282 [240 Cal.Rptr. 249].)

■ These rules of appellate review apply even where the evidence in the administrative record is undisputed, if that evidence is "subject to conflicting inferences with respect to the crucial issue. In such a case the trial court, if authorized . . . to exercise its independent judgment on the evidence, may draw its own inferences from the evidence in the record, and if the inferences so drawn are supported by substantial evidence, they are binding on the reviewing court. [Citations.]" ■■ (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 774, fn. 2 [163 Cal.Rptr. 619, 608 P.2d 707].)[3]

■ Having reviewed the record, we cannot say that the trial court erred as a matter of law in finding the DMV's evidence insufficient to establish that Yordamlis's BAC at the time of driving was 0.08 percent or more. The DMV submitted evidence that Yordamlis was driving erratically, smelled of alcohol, and had bloodshot/watery eyes, slurred speech, and an unsteady gait. It also submitted the laboratory report showing that a blood sample the laboratory received three days after Yordamlis's arrest had a BAC of 0.17 percent. However, the DMV submitted no evidence to establish when Yordamlis gave the tested blood sample. On this record, the trial court reasonably could have determined that Yordamlis's BAC *at the time of driving* was lower. Therefore, we must affirm its decision.[4]

We reject the DMV's contention that, under sections 23152, subdivision (b), and 23153, subdivision (b), we must presume that Yordamlis's BAC "was in excess of .08 percent while driving [because] a chemical test taken

---

[3]We believe that the dissent, in making an "independent determination based on the undisputed facts" (dis. opn., *post*, at p. 664), applies the wrong standard of review. The trial court stated at the hearing that the DMV's finding regarding Yordamlis's BAC "is not supported by the evidence." In the judgment, the court stated both that the DMV's decision "is not supported by the evidence," and that the DMV "failed to sustain its burden by a preponderance of the evidence in that the evidence used to support a finding or determination that [Yordamlis] had been driving . . . when he had 0.08 percent or more, by weight, of alcohol in his blood was insufficient, as a matter of law . . . ." We find it clear from these statements that the court, using its independent judgment, was unwilling to infer from the evidence that Yordamlis's BAC was at least 0.08 percent. We review such a factual determination using the substantial evidence test. Indeed, this is precisely the standard of review that *the DMV* asks us to apply. The dissent's independent judgment test applies where the evidence is both undisputed and not subject to conflicting inferences and the issues only involve proper application of a statute or regulation. (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.*, *supra*, 26 Cal.3d at p. 774, fn. 2; *Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50].) Even in the dissent's view, the evidence in this case gives rise to only a "permissive" inference that Yordamlis's BAC was 0.08 percent or greater. (Dis. opn., *post*, at p. 665, fn. 1.)

[4]In reaching this conclusion, we express no opinion as to whether the evidence was sufficient to support a contrary inference, i.e., that Yordamlis's BAC at the time of driving was 0.08 percent or more. Given the posture of the case, that question is not before us; we need only decide whether the evidence supports the inference the trial court drew.

within three hours indicated a level of .08 percent or more." By their express terms, those presumptions apply only if the chemical test was performed "within three hours after the driving." (§§ 23152, subd. (b), 23153, subd. (b).) As we have already stated, there is no evidence that Yordamlis gave the tested blood sample within three hours of driving. Therefore, the presumptions do not apply.[5]

■ ■ We also reject the DMV's attempt to rely on the presumption that an "official duty has been regularly performed . . ." (Evid. Code, § 664) to establish that Yordamlis gave the blood sample within three hours of driving. The DMV's argument depends on section 23157, subdivision (a), under which a driver "is deemed" to have given consent to a chemical test that is "incidental to a lawful arrest . . . ." In *Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 142, footnote 4 [7 Cal.Rptr.2d 818], the court held that this section imposes on an officer a duty "to administer the test or have it administered by another." However, we find nothing in the language of this section that "imposes any particular time requirement that can be assumed to have been met pursuant to the presumption codified by Evidence Code section 664." (*Santos v. Department of Motor Vehicles, supra*, 5 Cal.App.4th at p. 550, fn. 10 [rejecting similar argument premised upon regulation requiring drawing of blood sample " 'as soon as feasible' "].)[6]

Nor do we agree with the DMV that, even if Yordamlis gave the blood sample more than three hours after driving, we must reverse because "the

[5]The DMV also relies on CALJIC No. 12.61.1 (1990 rev.) (5th ed. pocket pt.) and section 23155. CALJIC No. 12.61.1 is simply the jury instruction used in connection with sections 23152, subdivision (b), and 23153, subdivision (b), and likewise requires proof that the tested blood sample was obtained within three hours of driving. Under section 23155, subdivision (a)(3), a BAC of 0.08 percent or more gives rise to a presumption "that the person was under the influence of an alcoholic beverage at the time of the alleged offense." However, suspension under section 13353.2 depends on proof of a BAC at the time of driving, not on proof that the driver was under the influence.

[6]*Santos* fully supports our decision. There, the DMV relied on test results for a blood sample that Santos gave at some unknown time and the arresting officer's sworn statement, which reported that (1) Santos had been "driving in the slow lane at speeds of 45 to 60 miles per hour, weaving within the lane, crossing into the adjacent lane several times and following a small sedan too closely," and (2) had "bloodshot and watery eyes, unsteady gait, slurred speech and smelled of alcohol." (*Santos v. Department of Motor Vehicles, supra*, 5 Cal.App.4th at p. 542.) On this record, the appellate court found substantial evidence to support the trial court's reversal of the suspension, principally because there was no evidence of when Santos gave the blood sample. (*Id.*, at pp. 548-550.) The dissent finds *Santos* distinguishable because, unlike Yordamlis, Santos offered an expert who stated a belief that Santos's BAC was less than 0.08 percent at the time of driving. (Dis. opn., *post*, at pp. 665-666; *Santos, supra*, at p. 548.) However, the hearing officer in *Santos* could have disbelieved that evidence and upheld the suspension. (See *Davenport v. Department of Motor Vehicles, supra*, 6 Cal.App.4th at pp. 138-145 [affirming suspension notwithstanding expert testimony that, given evidence of driver's weight and drinking pattern, properly functioning

Department hearing referee would have been entitled to rely upon the observation of California's appellate courts that 'the greater the elapse of time the greater the benefit to the defendant, as the alcohol in his system becomes dissipated by the normal bodily processes.' [Citations.]" Appellate courts have also observed that a person's BAC rises for a period of time after drinking, and that a subsequently administered blood test therefore may reflect a BAC higher than the BAC at the time of driving.[7] (*Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 548.) The DMV submitted no evidence to establish that a 0.17 percent BAC reading from a blood sample taken more than three hours after alcohol consumption is necessarily inconsistent with a BAC of less than 0.08 percent at the time of driving. (*Id.,* at p. 549, fn. 8.) Therefore, we cannot say that the trial court's determination is in error.

Finally, we do not agree that the evidence regarding the manner in which Yordamlis drove, his behavior, or his physical condition *requires* a different result. We recognize that some courts have stated that such facts are both relevant and admissible as circumstantial evidence that a driver's BAC was above the legal limit at the time of driving. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10 [198 Cal.Rptr. 145 [673 P.2d 732]; *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 526, fn. 6 [7 Cal.Rptr.2d 18]; *People* v. *Randolph* (1989) 213 Cal.App.3d Supp. 1, 6-7 [262 Cal.Rptr. 378].) However, nothing in the record establishes that Yordamlis's conduct is necessarily inconsistent with a BAC of less than 0.08 percent. On the contrary, the Legislature based its decision in 1989 to lower the legal limit from 0.10 percent to 0.08 percent on "medical and driving demonstration studies [that] revealed that *most* people are impaired at a BAC of 0.05 percent or greater." (Cal. Highway Patrol, Enrolled Bill Rep. for Sen.

machine would have shown a BAC of between 0.02 and 0.06 percent].) Nevertheless, the appellate court affirmed the trial court's contrary conclusion.

[7]Indeed, it was this observation that led the Legislature to enact the statutory presumption that the BAC shown by a chemical test performed within three hours of driving is the BAC at the time of driving. (See Governor's Off., Dept. of Legal Affairs, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982 [presumption would "close a potential loophole . . . whereby a person . . . could claim that he or she had consumed quantities of alcohol which had not yet been absorbed into the bloodstream while the person was operating the vehicle, but which later raised the blood alcohol level"]; Health & Welf. Agency, Dept. of Alcohol & Drug Programs, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982 [presumption necessary because of the absence in existing law of any "provision for the delay involved between the time a person is arrested for a DUI and when the chemical test for BAC is actually administered," and the fact that "there are no means to determine a person's BAC at the time the person is actually *driving* the car"]; Bus. & Transportation Agency, DMV, Enrolled Bill Rep. for Sen. Bill No. 745 (1981-1982 Reg. Sess.) Sept. 1982 [presumption "would diminish the arguments that have arisen when extrapolating the blood alcohol content at the time of the test back to the time of the driving"].)

Bill No. 408 (1989-1990 Reg. Sess.) Sept. 1989, italics added.)[8] Thus, the evidence on which the DMV relies is consistent with a finding that Yordamlis's BAC at the time of driving was lower than 0.08 percent. ██ Therefore, we cannot say that the trial court erred.[9]

The judgment is affirmed.

White, P. J., concurred.

**WERDEGAR, J.**—I respectfully dissent.

The trial court's task in this case was to determine, using its independent judgment, whether the administrative decision was supported by the weight of the evidence. (*Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 545 [7 Cal.Rptr.2d 10].) On appeal, that determination will be reversed only if it is not supported by substantial evidence (*ibid.; Coombs* v. *Pierce* (1991) 1 Cal.App.4th 568, 576 [2 Cal.Rptr.2d 249]) or is based upon an erroneous conclusion of law (*Webb* v. *Miller* (1986) 187 Cal.App.3d 619, 625 [232 Cal.Rptr. 50]).

In the instant case, the trial court ruled the evidence used by the Department of Motor Vehicles (DMV) to support its finding Yordamlis was driving a motor vehicle when he had a blood-alcohol content (BAC) of 0.08 percent or more was insufficient "as a matter of law." The trial court based its ruling on (1) lack of foundation for the admissibility of the BAC test results, (2) lack of foundation as to the qualifications of the person who performed the chemical analysis of Yordamlis's blood test, and (3) failure to demonstrate a relationship between the BAC test results and Yordamlis's BAC at the time of driving. Since the court's ruling, however, appellate court decisions have

---

[8]See also Business, Transportation and Housing Agency, DMV, Enrolled Bill Report for Senate Bill No. 408 (1989-1990 Reg. Sess.) September 1989, page 2 ("Research indicates that most drivers are substantially impaired at blood alcohol concentrations even lower than" 0.08 percent); Senate Rules Committee Report on Senate Bill No. 408 (1989) page 2 (1989-1990 Reg. Sess.) (referencing "scores of laboratory studies" showing that " '[b]lood alcohol levels of .05 percent and more produce impairment of the major components of driver performance . . .' ").

[9]Given our standard of review, we disagree with the dissent's focus on the inferences that the *hearing officer* could draw from the evidence. (Dis. opn., *post*, at pp. 664-665, fn. 1 and accompanying text.) The question for us on appeal is not whether substantial evidence supports the administrative determination, but whether there is substantial evidence in support of the *trial court's* findings. (*Petrucci* v. *Board of Medical Examiners, supra*, 45 Cal.App.3d at p. 87.) In concluding that there is, we do not, as the dissent suggests, hold that omission of the time of the test "necessarily deprive[s] the test results of probative value as a matter of law." (Dis. opn., *post*, at p. 666.) We simply hold that, based on the record before it, the trial court did not err in finding the totality of the evidence insufficient to sustain the DMV's burden of proof.

established that the first two bases are erroneous as a matter of law. (*Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 140-143 [7 Cal.Rptr.2d 818]; *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 547; *McKinney* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 519, 525-526 [7 Cal.Rptr.2d 18]; *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384, 389 [7 Cal.Rptr.2d 5]; *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809, 816-817 [3 Cal.Rptr.2d 478].) Consequently, the only remaining basis for the court's ruling is failure of the DMV to offer expert opinion connecting Yordamlis's BAC of 0.17 percent at the time of the test to his BAC at the time of his driving.

Because the trial court ruled the above evidence insufficient *as a matter of law,* this court is not, as my colleagues assume, limited to substantial evidence review, but, rather, may reach its independent determination based on the undisputed facts. (E.g., *Webb* v. *Miller, supra,* 187 Cal.App.3d at p. 625.) Based on the undisputed facts, I believe the trial court erred in finding the evidence insufficient as a matter of law to support suspension of Yordamlis's driver's license.

The law is settled that BAC at time of driving can be shown *only* by circumstantial evidence and that a chemical test result is merely one kind of circumstantial evidence. (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 266, fn. 10 [198 Cal.Rptr. 145, 673 P.2d 732]; *McKinney* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 526, fn. 6; *People* v. *Randolph* (1989) 213 Cal.App.3d Supp. 1, 6-7 [262 Cal.Rptr. 378].) In the instant case, the hearing officer had before him the following circumstantial evidence: (1) the sworn statement of Officer Bhatnagar, the arresting officer, that Yordamlis was stopped because he was driving erratically and, at the time of the stop, his eyes were bloodshot and watery, his speech slurred, his gait unsteady, and he had about his person an odor of alcohol; and (2) the report of the blood test results showing that at the time Yordamlis's blood was drawn he had a BAC of 0.17 percent. In addition, the hearing officer was permitted to draw inferences and deductions from the evidence before him. (Evid. Code, § 600, subd. (b); compare *McKinney* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 524 [absent contrary evidence, hearing officer could infer police officer observed driver driving in an inebriated condition shortly before his arrest] with *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at pp. 549-550 & fn. 9 [given contrary evidence, hearing officer could not infer driver's BAC at time of driving was at least as high as at time of testing].) Here, the evidence showed objective indicia of intoxication at the time of Yordamlis's arrest and a BAC of more than double the legal limit.

Pursuant to Vehicle Code section 23152, subdivision (b), if the blood sample was collected within three hours of Yordamlis's arrest, the hearing

officer, absent contrary evidence, would be required to find the test results established Yordamlis's BAC at time of driving. (*Burge* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 391; accord, *Bell* v. *Department of Motor Vehicles, ante,* p. 304 [13 Cal.Rptr.2d 830].) If, by contrast, the sample was collected anytime after three hours, the hearing officer, in my view, could reasonably infer that at the time of driving Yordamlis's BAC was at least equal to and probably higher than the 0.17 percent shown by the test.[1]

The logic of the latter inference has uniformly been recognized by case law in this state. Thus, in *In re Martin* (1962) 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801], our Supreme Court stated: "It is a matter of common knowledge that the intoxicating effect of alcohol diminishes with the passage of time; hence, the probative value of a blood test diminishes as well. In a short period of time an intoxicated person may 'sober up' sufficiently to negate the materiality of a blood test where the sample has not been timely withdrawn. [Citation.]" (Accord, *People* v. *Schrieber* (1975) 45 Cal.App.3d 917, 922 [119 Cal.Rptr. 812] ["[T]he greater the elapse of time the greater the benefit to the defendant, as the alcohol in his system becomes dissipated by the normal body processes."]; see also *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 549, fn. 8 ["If the blood was drawn more than three hours after the arrest, the test results would reflect a blood-alcohol level lower than the maximum that had been reached before the alcohol began to dissipate"].) Consequently, regardless of when the blood sample was taken, the 0.17 percent test result, together with the other evidence, was sufficient to permit the hearing officer to find the DMV had met its burden of proof that Yordamlis was driving with 0.08 percent or more BAC.

*Santos* v. *Department of Motor Vehicles, supra,* does not compel a contrary conclusion. In *Santos,* as here, the DMV introduced the arresting officer's sworn statement showing probable cause to arrest the driver and that she displayed objective indicia of intoxication, together with a blood test report showing, in that case, a BAC of 0.13 percent, with no indication of the time the sample was taken. The *Santos* court expressly recognized that (1) the untimed test results were admissible; (2) the hearing officer could rely on reasonable inferences and deductions from the evidence before him or her; and (3) if the blood was drawn more than three hours after the arrest, the test results would reflect a BAC lower than the maximum that had been reached before the alcohol began to dissipate. (5 Cal.App.4th at pp. 542, 549 & fn. 8.) In contradistinction to this case, however, the driver in *Santos* introduced

---

[1]The inference, of course, is permissive, not required. But if the hearing officer in the exercise of his discretion draws the inference, he does not, as the superior court ruled, err as a matter of law in relying thereon in determining the DMV has made a prima facie case.

evidence that her BAC would have been less than 0.08 percent at the time of driving "because at least the last drink she consumed would not yet have been absorbed." (*Id.* at p. 548.) *In light of that evidence,* the *Santos* court correctly held that the time the blood sample was drawn was "a piece of information critical to a determination" of the driver's BAC at the time of driving. (*Id.* at p. 549.) Lacking such information, "[t]he Department did not rebut respondent's evidence that the test results failed to prove her blood-alcohol level *at the time of driving* was 0.08 percent or higher" (*ibid.,* italics in original) and thus failed to meet its burden of proof.

Here, of course, Yordamlis introduced no evidence contrary to the DMV's initial showing. The superior court thus erred in ruling the DMV failed as a matter of law in its burden of proof. (Cf. *McKinney* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 526, fn. 6 [absent contrary evidence, circumstantial evidence driver was intoxicated when driving provided independent support for hearing officer's determination].)

In concluding the blood-alcohol test results were probative circumstantial evidence of Yordamlis's BAC at the time of driving, I in no way intend to condone the deficient procedures in this case that permitted collection of a blood sample with no indication of the time the sample was collected. Surely, it would be a simple matter to devise a specimen label or form that requires notation of the time a sample is collected, as, indeed, the DMV evidently has already done. I merely advance the unremarkable proposition that omission of the time here did not necessarily deprive the test results of probative value as a matter of law.

I would reverse.

A petition for a rehearing was denied January 5, 1993.