[No. A061141. First Dist., Div. Three. Mar. 28, 1995.]

JEFFREY SCOTT GANANIAN, Plaintiff and Respondent, v.
FRANK S. ZOLIN, as Director, etc., Defendant and Appellant.

## Counsel

Daniel E. Lungren, Attorney General, Henry G. Ullerich, Assistant Attorney General, William S. Clark, Jose R. Guerrero and S. Michele Inan, Deputy Attorneys General, for Defendant and Appellant.

John Halley for Plaintiff and Respondent.

## Opinion

**CHIN, P. J.**—Frank S. Zolin, as Director of the Department of Motor Vehicles (DMV), appeals from a judgment granting respondent Jeffrey Scott Gananian's petition for writ of mandamus. The writ directs the DMV to set aside its suspension of Gananian's driving privilege for driving with an illegal blood-alcohol concentration (BAC). The DMV contends that substantial evidence does not support the trial court's decision. We agree. Therefore, we reverse.

### Factual and Procedural Background

On the morning of October 10, 1992, California Highway Patrol Officer Jeffrey T. Cobb arrested Gananian for driving under the influence of alcohol

in violation of Vehicle Code section 23152.[1] Cobb then administered two breath tests to determine Gananian's BAC. The first test showed a BAC of 0.14 percent, and the second showed a BAC of 0.13 percent. Based on these results and pursuant to section 13353.2, Cobb issued an administrative per se order suspending Gananian's driving privilege, effective 45 days from the date of the order.

Gananian requested a formal administrative hearing to review the suspension. At the hearing, the DMV relied exclusively on documentary evidence to support the suspension, including the sworn report that Cobb submitted under section 23158.2,[2] his arrest report, the report of the results from the breath tests that he administered, and the police report of San Mateo County Deputy Sheriff Jerry Grochowski, who participated in Gananian's detention and arrest. According to Cobb's sworn report, Grochowski observed Gananian driving at 80 to 100 miles per hour, weaving from side to side, and swerving into the oncoming traffic lane over solid double yellow traffic lines. Cobb did not see Gananian driving. The sworn report also indicated that Gananian had bloodshot/watery eyes, the odor of alcohol, an unsteady gait, and slurred speech, and that he failed field sobriety tests. Similarly, the unsworn reports of Cobb and Grochowski indicated that Grochowski observed Gananian driving and stopped him, and that Cobb later appeared and administered the field sobriety tests before arresting Gananian.

Gananian presented no evidence to rebut the DMV's case. Instead, he made evidentiary objections to most of the DMV's documentary presentation. Specifically, he raised a hearsay objection to Cobb's sworn report, arguing in part that it was inadmissible insofar as it did not report Cobb's personal observations, but reported Grochowski's observation of Gananian's driving. He raised a similar objection to Cobb's unsworn arrest report. He also asserted that the unsworn report was inadmissible because the DMV failed to lay a proper foundation for it as a business or official record, and because it was not in the correct form for use in DMV hearings. Gananian asserted similar objections in challenging the admissibility of Grochowski's unsworn police report. Based on these objections, Gananian argued that the DMV failed to offer admissible evidence to sustain its burden of proving that he was driving the car. The hearing officer overruled all of Gananian's objections and affirmed the suspension.

Gananian then filed a petition for writ of mandamus in the superior court, in which he asserted that the DMV had suspended his driving privilege

---

[1]Unless otherwise indicated, all further statutory references are to the Vehicle Code.

[2]Section 23158.2, subdivisions (a) and (b), require the peace officer who arrests the driver or serves the suspension order "immediately [to] forward to the [DMV] a sworn report of all information relevant to the enforcement action" using "forms furnished or approved by" the DMV.

"without any lawful authority so to do." In his supporting memorandum, Gananian reasserted his evidentiary objections to the DMV's documentary evidence, arguing in part that the hearing officer had erroneously admitted the two unsworn police reports and the sworn report as proof that he was driving. At the hearing on the petition, the superior court agreed, finding that the unsworn reports were inadmissible under the Vehicle Code and that the evidence was otherwise insufficient to sustain the suspension. The superior court subsequently issued a judgment finding that the DMV failed to sustain its burden of proof and directing issuance of a writ of mandate commanding the DMV to set aside Gananian's suspension. The DMV then filed this timely appeal.

## DISCUSSION

■ "The trial court's task in this case was to determine, using its independent judgment, whether the weight of the evidence supported the administrative decision. [Citation.]" (*Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 659 [14 Cal.Rptr.2d 225].) In making that determination, the trial court had to "weigh the evidence and make its own determination as to whether the administrative findings [were] sustained." (*Petrucci* v. *Board of Medical Examiners* (1975) 45 Cal.App.3d 83, 87 [117 Cal.Rptr. 735].) Our task on appeal is to "review the record to determine whether the trial court's findings are supported by substantial evidence. [Citations.]" (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143, fn. 10 [93 Cal.Rptr. 234, 481 P.2d 242].) "We must resolve all evidentiary conflicts and draw all legitimate and reasonable inferences in favor of the trial court's decision. [Citations.] Where the evidence supports more than one inference, we may not substitute our deductions for the trial court's. [Citation.] We may overturn the trial court's factual findings only if the evidence before the trial court is insufficient as a matter of law to sustain those findings. [Citation.]" (*Yordamlis* v. *Zolin, supra,* 11 Cal.App.4th at p. 659.)

■ To justify suspension of Gananian's driving privilege, it is the DMV's burden to prove that Cobb had reasonable cause to believe that Gananian was driving in violation of section 23152 or 23153, that he lawfully arrested Gananian, and that Gananian was driving with a BAC of at least .08 percent. (*Daniels* v. *Department of Motor Vehicles* (1983) 33 Cal.3d 532, 536 [189 Cal.Rptr. 512, 658 P.2d 1313]; *Santos* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 537, 544-545 [7 Cal.Rptr.2d 10].) In meeting its burden, the DMV may use hearsay evidence ". . . for the purpose of supplementing or explaining other evidence . . . ." (Gov. Code, § 11513, subd. (c).) However, hearsay evidence is not ". . . sufficient in itself to support a finding unless it would be admissible over objection in civil

actions. . . ." (Gov. Code, § 11513, subd. (c); see also *Daniels* v. *Department of Motor Vehicles*, *supra*, 33 Cal.3d at p. 538.)

In challenging the DMV's evidentiary showing, Gananian argues only that the "record contains no evidence sufficient over objection" to establish that he "was in fact driving . . . ." The DMV asserts that it established this fact by submitting Grochowski's unsworn police report and Cobb's sworn report, both of which indicate that Grochowski observed Gananian driving. The DMV contends that these documents would be admissible in a civil action under the public employee records exception to the hearsay rule (Evid. Code, § 1280), and are therefore sufficient to establish the fact of driving. Gananian responds that section 23158.2 prohibits the DMV from relying on Grochowski's unsworn police report, even if it otherwise qualifies as a public employee record. Regarding Cobb's sworn report, Gananian concedes that courts have found similar reports admissible under Evidence Code section 1280 as public employee records and sufficient to justify suspension. (See, e.g., *Snelgrove* v. *Department of Motor Vehicles* (1987) 194 Cal.App.3d 1364, 1369-1375 [240 Cal.Rptr. 281]; *Fisk* v. *Department of Motor Vehicles* (1981) 127 Cal.App.3d 72, 76-79 [179 Cal.Rptr. 379, 31 A.L.R.4th 905].) However, he contends that "such a report is not admissible under the official records exception . . . as to any assertions not based on the *personal knowledge* of the officer who prepared it. [Citations.]" (Original italics.) Accordingly, Cobb's sworn report does not qualify under the exception insofar as it relates Grochowski's observation of the driving.

We agree with the DMV that Cobb's sworn report qualifies under Evidence Code section 1280 as an admissible public employee record even to the extent that it reports Grochowski's personal observations, and thus is sufficient alone to prove that Gananian was driving. ■ Evidence Code section 1280 makes admissible a writing that records an act, condition, or event if "(a) [t]he writing was made by and within the scope of duty of a public employee; [¶] (b) [t]he writing was made at or near the time of the act, condition, or event; and [¶] (c) [t]he sources of information and method and time of preparation were such as to indicate its trustworthiness." The object of this hearsay exception "is to eliminate the calling of each witness involved in preparation of the record and substitute the record of the transaction instead. [Citations.]" (*County of Sonoma* v. *Grant W.* (1986) 187 Cal.App.3d 1439, 1451 [232 Cal.Rptr. 471].)[3] Accordingly, for the exception to apply, "[i]t is not necessary that the person making the entry have

---

[3]In *County of Sonoma*, we were discussing the business records exception to the hearsay rule (Evid. Code, § 1271) rather than the public employee records exception. (*County of Sonoma* v. *Grant W.*, *supra*, 187 Cal.App.3d at pp. 1450-1451.) The two exceptions are essentially the same, except that the former applies to business records instead of official

personal knowledge of the transaction. [Citations.]" (*Loper* v. *Morrison* (1944) 23 Cal.2d 600, 609 [145 P.2d 1].) Assuming satisfaction of the exception's other requirements, "[t]he trustworthiness requirement . . . is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly."[4] (*People* v. *Baeske* (1976) 58 Cal.App.3d 775, 780 [130 Cal.Rptr. 35], original italics.)

In *Taylor* v. *Centennial Bowl, Inc.* (1966) 65 Cal.2d 114 [52 Cal.Rptr. 561, 416 P.2d 793], the Supreme Court discussed application of these principles to information in police records. In *Taylor*, plaintiff, who sued for personal injuries in connection with an assault at a bowling alley, unsuccessfully sought to have police officers testify from police records regarding other disturbances at the bowling alley. (*Id.* at pp. 117-119.) Addressing the admissibility of this testimony, the court explained: "In a proper case the business records exemption to the hearsay rule is applicable to public documents, such as police reports. [Citations.] The problem arises, however, because business records are not admissible under this exception when they are 'not based upon the report of an informant having the business duty to observe and report.' [Citations.] The admissibility of the instant report, therefore, depends first upon whether its contents are based on [the testifying officer's] own observations, *or the observations of other police officers or public officials whose job it is to know the facts recorded*; if so, but only if so, is it then admissible under the business records exception. [Citations.]" (*Id.* at p. 126, italics added.)

■ Following *Taylor*, we find that Cobb's sworn report was admissible under Evidence Code section 1280 as proof that Grochowski observed

---

records and " 'requires a witness to testify as to the identity of the record and its mode of preparation in every instance. . . .' " (*People* v. *Dunlap* (1993) 18 Cal.App.4th 1468, 1477 [23 Cal.Rptr.2d 204].) Given this similarity, decisions analyzing the business records exception are applicable to our analysis in this case.

[4]As the court explained in *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at pages 78-79: ". . . the essential 'circumstantial probability of trustworthiness' justifying the common law exception to the hearsay rule for official statements 'is related in its thought to the presumption that public officers do their duty. When it is a part of the *duty of a public officer* to make a statement as to a fact coming within his official cognizance, the great probability is that he does his duty and makes a correct statement . . . . The fundamental circumstance is that an official duty exists to make an accurate statement, and that this special and weighty duty will usually suffice as a motive to incite the officer to its fulfillment. . . . It is the influence of the official duty, broadly considered, which is taken as the sufficient element of trustworthiness, justifying the acceptance of the hearsay statement.' [Citation.] (Italics in original.)" (See also *Levy-Zentner Co.* v. *Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 786 [142 Cal.Rptr. 1] [because the requirement of a business duty to transmit information is a reasonable means of assuring reliability, the business records exception should apply where the entry is based upon information transmitted to the recorder by persons with firsthand knowledge and a business duty to know and report the information].)

Gananian driving. In reporting his personal observations to Cobb, Grochowski was acting pursuant to his duty as a police officer to observe the facts and report them correctly. Accordingly, Cobb's sworn report qualified as an admissible public employee record even to the extent that it reported Grochowski's observations. It constituted adequate proof that Gananian was, in fact, driving. Gananian offered no contrary evidence. Nor did he offer any evidence to suggest that Grochowski did not perform his duty. Accordingly, the record does not support the trial court's decision.[5]

In support of the trial court's decision, Gananian cites a series of recent license suspension cases that reached a seemingly contrary conclusion regarding the requirement of personal knowledge. The lead case is *Imachi* v. *Department of Motor Vehicles* (1992) 2 Cal.App.4th 809 [3 Cal.Rptr.2d 478]. There, the DMV relied on a supplemental sworn statement in which a police officer reported blood test results and declared "that he had reviewed the chemical test results and that the information on the form was true and correct." (*Id.* at p. 812.) The court held that the supplemental statement was inadmissible to the extent that it reported the test results because the test was "not performed by the officer" and the results were "not within [his] personal knowledge." (*Id.* at p. 816.) The court explained: "The problem . . . is that the blood test results were put in evidence only through the hearsay statement of the officer. While the statement is admissible as a public employee record to the extent it reports the officer's firsthand observations (*Snelgrove, supra,* 194 Cal.App.3d [at p.] 1375; *Fisk, supra,* 127 Cal.App.3d at p. 77), the hearsay within the statement could not be the sole basis for suspension of [the] driver's license. (Gov. Code, § 11513; see *Daniels, supra,* 33 Cal.3d at p. 538.)" (*Imachi* v. *Department of Motor Vehicles, supra,* 2 Cal.App.4th at p. 817, fn. omitted.)

For several reasons, we choose not to follow *Imachi* insofar as it suggests that the public employee records exception applies only if the person making the record has personal knowledge of the recorded facts. First, there is no mention in *Imachi* of the cases, such as *Taylor,* that expressly declare to the contrary. Second, we do not believe that the decisions on which *Imachi* relies support the narrow rule that *Imachi* appears to announce. Citing *Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d 1364, and *Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d 72, the court in *Imachi* stated: "The conclusion of these cases that the officer's statement falls within the public employee records exception to the hearsay rule was premised on the fact that the officer's report was based on firsthand observations. [Citations.]" (*Imachi* v. *Department of Motor Vehicles, supra,* 2

---

[5]Given our conclusion, we need not determine whether section 23158.2 prohibits the DMV from relying on the unsworn police reports.

Cal.App.4th at pp. 815-816.) Although this statement is accurate, neither *Snelgrove* nor *Fisk* suggests that sworn reports qualify as public employee records *only* if they contain the reporting officer's firsthand observations. In *Snelgrove*, the court found that a sworn statement was an admissible public record, noting that "[t]he source of information—firsthand observations by the officer—indicates trustworthiness [citation], and the only hearsay items within the statement are Snelgrove's own admissions [citations]." (*Snelgrove* v. *Department of Motor Vehicles, supra,* 194 Cal.App.3d at p. 1375.) Similarly, in *Fisk,* the court found that the source of information in a sworn statement was trustworthy for purposes of the hearsay exception "since the writing consisted of a report of firsthand observations by the arresting officer." (*Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 77.) In each case, the court simply determined the exception's applicability *based on the facts at issue,* i.e., that the source of information was the reporting officer's firsthand observations. Neither stated a rule applicable to a different set of facts, and neither establishes that personal knowledge is a prerequisite to application of the public employee records exception.[6] For these reasons, we do not find *Imachi* determinative of the issue before us.

Nor do we find Gananian's citation to *Burge* v. *Department of Motor Vehicles* (1992) 5 Cal.App.4th 384 [7 Cal.Rptr.2d 5] persuasive. There, the court, in generally discussing the applicable principles, stated: "Public employee business records . . . are admissible in civil actions only to the extent that they report the employee's firsthand knowledge. [Sworn] statements, therefore, may form the sole basis for suspension of a driver's license only if made from firsthand observation. [Citation.]" (*Id.* at p. 389.) As authority for this proposition, the court relied *exclusively* on *Imachi.* Moreover, since the documentary evidence in *Burge* only reported firsthand observations (*id.* at pp. 389-390), the court's statement is dictum to the extent it purports to address the adequacy of documents that do not. For these reasons, we choose not to follow *Burge.*

---

[6]On the contrary, quoting *People* v. *Baeske, supra,* 58 Cal.App.3d at page 780, the court in *Fisk* stated: " 'The trustworthiness requirement for [the public employee records] exception to the hearsay rule is established by a showing that the written report is based upon the observations of public employees who have a *duty* to observe the facts and report and record them correctly.' [Citations.]" (*Fisk* v. *Department of Motor Vehicles, supra,* 127 Cal.App.3d at p. 77, italics added by the *Baeske* court.) *Fisk*'s reliance on *Baeske* is significant. There, defendant contended that the trial court had improperly excluded a police report of a telephone call from the victim's neighbor, in which the neighbor reported the license number of the car involved in the crime. After making the statement that *Fisk* quotes, *Baeske* found the public employee records exception inapplicable because the neighbor, "the source of the information, was not a public employee with any duty either to observe facts correctly or to report her observations accurately to the police department." (*People* v. *Baeske, supra,* 58 Cal.App.3d at p. 781.) The court's decision implies that the report would have been admissible had the source of the information been a public employee with such a duty.

For similar reasons, we choose not to follow the other cases Gananian cites. In *Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at pages 546-547, the same appellate panel that decided *Imachi* simply relied on its prior opinion in holding that a test report from the laboratory that performed the test was admissible as a public employee record.[7] In *Wilson* v. *Zolin* (1992) 9 Cal.App.4th 1104, 1106-1107 [11 Cal.Rptr.2d 870], the court cited *Imachi*'s statement regarding the necessity of personal knowledge only as a point of distinction because the documentary evidence in *Wilson* was a firsthand account of test results. The court therefore had no occasion to examine *Imachi*'s analysis. In *Davenport* v. *Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 141, footnote 3 [7 Cal.Rptr.2d 818], the court discussed *Imachi*'s conclusion that test "results are admissible over a hearsay objection *only if reported by the test analyst, who reports firsthand observations.* [Citation.]" *Davenport* did not present this question, however, because there was "no information" as to whether the reporting officer directly observed the test results and there was no hearsay objection "raised in the trial court."[8] (*Ibid.*) Thus, none of the cases on which Gananian relies prevents us from concluding that Cobb's sworn statement is admissible under Evidence Code section 1280 to the extent it reports Grochowski's observation of the driving.

Nor does the Third District Court of Appeal's recent decision in *Cantrell* v. *Zolin* (1994) 23 Cal.App.4th 128 [28 Cal.Rptr.2d 238] alter our conclusion. There, as in this case, the DMV relied on a sworn statement in which one officer reported another officer's observation of the driving. (*Id.* at p. 131.) The driver challenged the admissibility of this statement only insofar as it was relevant to the existence of probable cause to believe that the driver had

[7] Quoting *Imachi*, the court explained that " '. . . the requisite indicia of trustworthiness would be supplied by the fact that the analyst was reporting firsthand observations as well as by the presumption of official duty regularly performed. (Evid. Code, § 664.)' " (*Santos* v. *Department of Motor Vehicles, supra,* 5 Cal.App.4th at p. 547.)

[8] The court in *Davenport* also stated that "[e]ach matter sworn to [in a sworn report] must itself be supported by an adequate foundation of personal knowledge by the officer and any other appropriate guarantee of reliability, or that matter is not admissible and cannot be relied upon. [Citations.]" (*Davenport* v. *Department of Motor Vehicles, supra,* 6 Cal.App.4th at p. 140.) Since there was no hearsay objection, this statement is dictum. Moreover, the court's supporting citations do not establish this rule. In *Daniels* v. *Department of Motor Vehicles, supra,* 33 Cal.3d at page 537, the court held that a driver's accident report was not admissible under the business records exception because, although the source of the information was trustworthy, there was no showing as to "its identity and the mode of its preparation." In both *Carlton* v. *Department of Motor Vehicles* (1988) 203 Cal.App.3d 1428 [250 Cal.Rptr. 809], and *Hoel* v. *City of Los Angeles* (1955) 136 Cal.App.2d 295 [288 P.2d 989], courts held the exception inapplicable to police reports that either were or might have been based on observations of participants and bystanders who had no official duty to observe and report the relevant facts. None of these cases establishes that the exception applies only where the record contains personal observations.

driven while under the influence. (*Ibid.*) The court rejected the challenge, finding that the statement was not hearsay on the issue because the DMV offered it to prove only the reasonableness of the officer's belief, not the truth of the matter stated. (*Id.* at pp. 132-133.) In a footnote, the court stated that the report was also relevant as proof that the driver was actually driving. (*Id.* at p. 133, fn. 2.) As to this issue, the court asserted that the report "was hearsay and thus insufficient alone to support a finding [citation]." (*Ibid.*) However, the court offers no analysis to support its statement. Moreover, the statement is dictum because the driver did not object to the report's introduction as proof that he was driving and the report "was corroborated by the testimony of [the driver] and his friends . . . ." (*Ibid.*) For these reasons, we choose not to follow *Cantrell.*

The judgment is reversed, and the matter is remanded to the trial court with directions to deny Gananian's petition and reinstate the DMV's suspension order. The DMV shall recover its costs on appeal.

Merrill, J., and Corrigan, J., concurred.

Respondent's petition for review by the Supreme Court was denied June 22, 1995. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.