Opinion
THE COURT.*
Vehicle Code section 23152, subdivision (b) (section 23152(b))[1] prohibits driving a motor vehicle with a blood-alcohol level of 0.08 percent or greater. In this case, a standard breath test administered to defendant shortly after an accident showed a blood-alcohol level of 0.07 percent. The People offered to introduce expert testimony to show that defendant’s blood-alcohol level was at least 0.08 percent at the time he drove his car. The proposed expert testimony was based on a methodology known as “retrograde extrapolation.” It considered the breath test results, defendant’s statements regarding when he last consumed alcohol, and studies regarding the normal “elimination rate” for alcohol in the blood in reaching a conclusion regarding defendant’s blood-alcohol content at the time of driving.
At defendant’s request, the trial court excluded the proposed expert testimony. Relying primarily on Baker v. Gourley (2002) 98 Cal.App.4th 1263 [120 Cal.Rptr.2d 348], the court inferred a legislative intent that a violation of section 23152(b) cannot be proven without a valid chemical test showing a blood-alcohol content of 0.08 percent or greater. With the People’s expert testimony excluded, the court dismissed the charge on its own motion in the interest of justice pursuant to Penal Code section 1385.
*Supp. 4 We conclude that Baker v. Gourley, supra, 98 Cal.App.4th 1263, does not stand for nearly so sweeping a proposition. Nor do we find anything in the language of section 23152(b) suggesting an inflexible limitation on the manner in which the People can prove their case. The fact that the Legislature provided a presumption that favors the People if they can show a blood-alcohol chemical test result of 0.08 percent or greater within three hours after driving does not mean they cannot attempt to prove their case without the benefit of the statutory presumption. Here, because the People were prevented from trying to make their case, we reverse and remand with directions to reinstate the section 23152(b) charge and deny defendant’s request to exclude the proposed retrograde extrapolation testimony.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of May 27, 2006, California Highway Patrol Officer Chris Jensen was dispatched to investigate a collision involving a vehicle driven by defendant Benjamin F. Warlick. At the scene of the collision, Warlick admitted to drinking alcohol earlier in the evening. A preliminary alcohol screening (PAS) test administered by Jensen showed that Warlick had a blood-alcohol level of 0.07 percent at approximately 12:17 a.m. Charged with violating section 23152(b), Warlick made a motion in limine to exclude any expert testimony based on retrograde extrapolation analysis. The trial court conducted a hearing pursuant to Evidence Code section 402 at which the prosecution offered the testimony of Marisa Ochoa, a criminalist from the San Diego County Sheriffs Department. Based on the PAS test result, Warlick’s statements about his consumption of alcohol, and studies regarding normal alcohol elimination rates, Ochoa indicated she would opine that Warlick had a blood-alcohol level of at least 0.08 percent at the time of driving. The trial court ruled Ochoa’s proposed testimony inadmissible. It read Baker v. Gourley, supra, 98 Cal.App.4th 1263, as holding that a violation of section 23152(b) cannot be proved without a chemical test showing a blood-alcohol level of 0.08 percent or greater. Any other result, the court reasoned, would permit proof of a violation by means of circumstantial evidence, an outcome it believed was specifically precluded by Baker. (See Baker, supra, 98 Cal.App.4th at p. 1273.)
Because the prosecutor conceded he could not establish a violation of section 23152(b) without retrograde extrapolation evidence, the court dismissed the charge. The People then filed this appeal. (See Pen. Code, § 1466, subd. (1)(B).)

*Supp. 5
DISCUSSION

Section 23152(b) makes it “unlawful for any person who has 0.08 percent or more, by weight, of alcohol in his or her blood to drive a vehicle.” The statute also creates “a rebuttable presumption that the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of driving the vehicle if the person had 0.08 percent or more, by weight, of alcohol in his or her blood at the time of the performance of a chemical test within three hours after the driving.” (Ibid.)
In Baker v. Gourley, supra, 98 Cal.App.4th 1263, the Court of Appeal reviewed a pretrial administrative license suspension by the Department of Motor Vehicles (DMV) under section 13353.2 after a driver was arrested for driving with a blood-alcohol level of 0.08 percent or greater. Because the DMV failed to meet its burden of showing that a chemical test that was not conducted in accordance with applicable regulations was nevertheless reliable, the test results were deemed inadmissible. (Baker, supra, at p. 1265.) Faced with no admissible chemical test, the DMV attempted to justify its suspension of the defendant’s license with evidence of symptoms typically associated with intoxication, such as slurred speech and bloodshot eyes. (Ibid.)
The Baker court framed the question before it as follows: “Can a given amount of blood-alcohol level be established without a valid chemical test by evidence of behavior or indicia typically associated with intoxication, such as, like here, slurred speech, bloodshot eyes, or an unsteady gait?” (Baker v. Gourley, supra, 98 Cal.App.4th at pp. 1265-1266.) Noting that these factors may be present in a person with a blood-alcohol level of less than 0.08 percent, the Court of Appeal found this evidence inadequate to support the summary suspension of the defendant’s driver’s license. It was in this context that the Baker court noted that “circumstantial evidence without a valid chemical test is insufficient to suspend a license.” (Id. at p. 1273.)
The Baker decision is limited by its terms to the “so-called ‘Admin Per Se’ laws where the . . . [DMV] suspends a driver’s license when a motorist has been arrested for drunk driving before the motorist has had the benefit of a trial in a court of law.” (Baker v. Gourley, supra, 98 Cal.App.4th at p. 1264.) The court was careful to emphasize that the case did “not involve a criminal prosecution for drunk driving.” (Ibid.) These limitations alone advise caution in extending the Baker holding to a criminal action for violation of section 23152(b).
*Supp. 6 But even assuming that the per se nature of section 23152(b) would make Baker’s analysis of section 13353.2 similarly applicable, the factual context of that case is of crucial importance in understanding the scope of the holding. Baker’s statement precluding reliance on circumstantial evidence was based expressly on the lack of a “valid chemical test.” (Baker v. Gourley, supra, 98 Cal.App.4th at p. 1273, italics added.) Here in contrast, there was a perfectly valid chemical test—that happened to show a blood-alcohol level of only 0.07 percent. By its express terms, then, the statement relied on by the trial court here simply does not apply.
Moreover, the circumstantial evidence considered in Baker is of an entirely different nature than that offered here, and the Baker court’s comment must be understood.in its factual.context. “ ‘It is the general rule that the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts.’ ” (Brown v. Kelly Broadcasting Co. (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406], quoting River Farms Co. v. Superior Court (1933) 131 Cal.App. 365, 369 [21 P.2d 643].) The circumstantial evidence in Baker was insufficient precisely because “the usual symptoms of substantive intoxication—slurred speech, bloodshot eyes, etcetera—can manifest themselves at a blood-alcohol level below .08.” (Baker v. Gourley, supra, 98 Cal.App.4th at p. 1273.) In other words, even a driver who manifests the “usual symptoms” may not have had a blood-alcohol level of at least 0.08 percent. Here, the whole point of the proffered retrograde extrapolation analysis will be to show that if Warlick had a blood-alcohol level of 0.07 percent at 12:17 a.m., he must have had a level of at least 0.08 percent when he was driving.
This less expansive reading of Baker has the added advantage of making it consistent with Supreme Court decisions recognizing the validity of retrograde extrapolation evidence, albeit in contexts different than the facts of this case. (See People v. Clark (1993) 5 Cal.4th 950, 993 [22 Cal.Rptr.2d 689, 857 P.2d 1099].) The fact that such extrapolations “ ‘ “can be speculative” ’ ” (goes to the weight rather than the admissibility of such testimony. (People v. Thompson (2006) 38 Cal.4th 811, 834 [43 Cal.Rptr.3d 750, 135 P.3d 3] (dis. opn. of Werdegar, J.).)
In addition to relying on Baker, the trial court here seemed to interpret section 23152(b) itself as precluding conviction in the absence of a chemical test showing a blood-alcohol level of 0.08 percent or higher. According to the court, the California statute differs from statutes in other states in that section *Supp. 7 23152(b) eliminates the need for the prosecution to circumstantially prove the actual blood-alcohol level at the time of driving. It construed the statute as having been written to “obviate" the need for all circumstantial evidence, including retrograde extrapolation evidence.
To the contrary, however, nearly 25 years ago in Burg v. Municipal Court (1983) 35 Cal.3d 257 [198 Cal.Rptr. 145, 673 P.2d 732], the Supreme Court made clear that proving a violation of section 23152(b) nearly always requires circumstantial evidence. As the court noted, the statute “prohibits driving a vehicle with a blood-alcohol level" above the legal limit; “it does not prohibit driving a vehicle when a subsequent test shows a level” above the legal limit. (35 Cal.3d at p. 266, fn. 10.) The crucial issue, then, is whether the defendant drove a vehicle at a time when his or her blood-alcohol level was 0.08 percent or higher. Since rarely, if ever, would a blood-alcohol test be performed while the defendant was driving, “[Circumstantial evidence will generally be necessary to establish the requisite blood-alcohol level called for by the statute.” (Ibid.) And a chemical test “will, obviously, be the usual type of circumstantial evidence ....” (Ibid.) Here, the prosecution proposes to do nothing more than use chemical test results in conjunction with other evidence to circumstantially prove that Warlick drove a vehicle with a blood-alcohol level above the legal limit.[2]
The trial court’s comments also suggest a belief that the rebuttable presumption created by the last sentence of section 23152(b) somehow demonstrates a legislative intent to preclude prosecutions without a chemical test showing a blood-alcohol level of 0.08 percent or greater. But this presumption or inference (see generally People v. Beltran, supra, 157 Cal.App.4th at pp. 241-244) does not define the crime or create a rule of substantive law. (See 2 Jefferson, Cal. Evidence Benchbook (Cont.Ed.Bar 3d ed. 2003) § 46.11, p. 1056.) Rather, it focuses on the prosecution’s ability to prove one fact by reference to another. Where the People introduce evidence of a valid chemical test administered within three hours of the defendant’s driving showing a blood-alcohol level of at least 0.08 percent, in the absence of other evidence the trier of fact may infer that the defendant’s blood-alcohol level at the time of driving was in excess of the legal limit. The statute simply does not address what can be inferred from a different set of circumstantial evidence, including a 0.07 percent blood-alcohol chemical test result in combination with other facts, which together suggest the defendant’s blood-alcohol level was higher at the time of driving.

*Supp. 8
CONCLUSION

Nothing in either the language of section 23152(b) or the construction of the statute by California appellate courts prevents the prosecution from trying to prove a statutory violation using expert testimony that relies on retrograde extrapolation evidence. Because the People in this case were precluded from even making the attempt, we reverse the order of dismissal and remand for further proceedings.

Sontag, P. J., Hernandez, J., and Dato, J.

 All statutory references are to the Vehicle Code unless otherwise indicated.

 Indeed, “retrograde extrapolation” is nothing more than the prosecutorial version of the “ ‘rising blood-alcohol’ defense.” (People v. Beltran (2007) 157 Cal.App.4th 235, 246 [68 Cal.Rptr.3d 489].) Each starts with the defendant’s blood-alcohol level at the time of the chemical test and relies on circumstantial evidence regarding the direction of change to convince the trier of fact that the level was different—significantly higher or lower—at the time of driving.