Filed 4/12/16  P. v. Silver CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C076715 |
| Plaintiff and Respondent, | (Super. Ct. No. 12SCR07623) |
| v. | |
| KELCY BONDELL SILVER, | |
| Defendant and Appellant. | |

A court found defendant Kelcy Bondell Silver guilty of various charges related to driving while under the influence of alcohol with prior violations.  The trial court also found true allegations that defendant had a blood-alcohol level of .15 percent or higher and had served a prior prison term.  The court sentenced defendant to a total term of four years in prison based on the charge of driving while under the influence of alcohol within 10 years of a prior DUI felony and the prior prison term enhancement.  The court stayed the sentences on the other counts.

On appeal, defendant contends:  (1) the trial court erred by failing to grant her motion for acquittal because at the end of the prosecution's case-in-chief there was

1

insufficient evidence that her intoxication and elevated blood-alcohol level were true while she was still driving, (2) even considering the evidence presented by defendant, there was insufficient evidence that she drove under the influence of alcohol or with a blood-alcohol level of .08 percent or higher, (3) there was insufficient evidence to support the finding that defendant drove with a blood-alcohol level of .15 percent or higher, (4) there was insufficient evidence to support the finding of a prior felony DUI conviction with respect to the third and fourth counts, and (5) defendant's felony DUI conviction was not a "prior violation" within the meaning of Vehicle Code section 23550.5, subdivision (a), as it existed at the time of defendant's violation and sentencing.[1] We conclude the prosecution's case-in-chief, and the evidence as a whole, contained the necessary substantial evidence that defendant was under the influence of alcohol and had a blood-alcohol level of .15 percent (and therefore .08) or higher when she was driving. Because we agree that defendant's DUI conviction was not a *prior* violation within the meaning of former section 23550.5, we need not address whether the prosecution introduced sufficient evidence of this conviction. We reverse defendant's counts 3 and 4 convictions for driving under the influence of alcohol within 10 years of a prior DUI felony and driving with a blood-alcohol level of 0.8 percent or higher within 10 years of a prior DUI felony. Otherwise, we affirm the judgment.

## I. BACKGROUND

*A.    The Prosecution's Witnesses*

On July 5, 2011, James Mahoney drove into a rest stop near Willows. He testified that, when he arrived, he noticed a woman leaned back in the driver's seat of a silver parked car. He watched her get out and throw away some beer cans as she "staggered to the bathroom." She seemed "drunk," and Mahoney noted what "appeared to be some

---

[1] Undesignated statutory references are to the Vehicle Code.

fresh scrapings down the passenger side" of the car. He testified that both before and after defendant's trip to the bathroom she was in her car "just sitting there." Mahoney called 911 and provided a description of the woman and her car.

Barbara Kirtley was in Mahoney's car. She testified that, when they arrived at the rest stop, she saw defendant sitting in the driver's seat of her car "messing with her headlights, like she was trying to turn them on and then turn them off—getting high beams, low beams." Then, defendant got out of her car, threw Budweiser cans into a trash can, and staggered to the restroom, "tripping a little bit." Kirtley passed by defendant as defendant was returning from the bathroom, and defendant smelled of alcohol and appeared lethargic and intoxicated. Kirtley estimated that she and Mahoney were at the rest stop for about 30 minutes and called 911 ten or fifteen minutes before they left. She did not recall the time of day, but agreed that it was "before dinner" without specifying when she ate dinner. They left before the officer arrived, and Kirtley did not see anyone else at the rest stop. Neither Kirtley nor Mahoney testified that they saw defendant drink.

At 8:40 p.m., California Highway Patrol Officer Michael Foss was dispatched to the rest stop on a report of a possible intoxicated female in a silver vehicle. He arrived about ten minutes later. The rest stop was in a remote area with no services or businesses in the immediate area. Officer Foss testified that when he arrived, defendant was standing by an open driver's side door of a car matching the license plate and description provided by dispatch. He "observed fresh damage along the right side of the vehicle."[2] As he approached, defendant walked to the front of the car holding the keys. The car was not running, but Officer Foss placed his hand on the hood and the temperature was

---

[2]  When he was asked by defense counsel if he had "any reason to believe that the injury to the car . . . is related to this offense at all," Officer Foss responded, "I do, but you're not going to like the answer." This line of questioning was not pursued by either counsel.

3

"hot . . . hotter than the ambient temperature of the air," which indicated to him, based on his training and experience, that the engine had been running recently. When he approached defendant, he immediately smelled alcohol on her breath and person. Defendant told him she was coming from Stanford University, had started drinking at 4:00 or 5:00 p.m., had consumed four beers, was drinking while she was driving, and only stopped drinking shortly before she spoke to him. "She indicated she felt buzzed, and she also made the statement that she does not believe she should be driving, or something to that effect."

Defendant's eyes were red and watery and her speech was soft and slow. Officer Foss conducted a series of field sobriety tests and noted results that were consistent with her being under the influence of alcohol. He also tested her using a preliminary alcohol screening device. The first test was given at 9:18 p.m., and showed a blood-alcohol level of .211 percent. Two minutes later, the result was .208.

Officer Foss performed a "cursory search without digging" of the trash cans described by the witnesses in front of defendant's car. He found one Bud Light Lime can. He also found an opened and mostly full can of Bud Light Lime on the right front floor of defendant's car and an open 18-pack of Bud Light Lime concealed under a bed pillow on the floorboard behind the driver's seat. The cardboard box was open, and there were 13 sealed cans inside.

Officer Foss arrested defendant and took her to a medical center for a blood test. The sample was drawn at 10:16 p.m.

Criminalist Tamla Corbin testified that most people are too impaired to safely operate a motor vehicle at a blood-alcohol level of .05, and all people are too impaired at a level of .08. Corbin analyzed defendant's blood sample and determined that her blood-alcohol level was .19 percent. The prosecutor posed a series of hypothetical questions to Corbin. In response, she opined that a female weighing about 140 pounds would need to have consumed a minimum of seven to nine drinks to obtain a blood-alcohol of .19

percent at the time the sample was drawn. If the same female drank four 12-ounce beers starting at 8:00 p.m. and finished them around 9:00 p.m., she would have a blood-alcohol level of around .07 percent at 10:00 p.m. Corbin explained that as alcohol enters the system, it begins burning off, so she would have to assume all of the alcohol was fully absorbed by 10:00 p.m. Therefore, she had factored in two hours of burn-off totaling about .04 percent.

In response to a hypothetical question posed by defense counsel, Corbin opined that a female weighing 130 pounds who consumed four 12-ounce beers between 7:00 p.m. and 10:00 p.m. would have a blood-alcohol level of about .04 percent at 10:00 p.m. factoring in about a .06 percent burn off. If the beers were consumed between 8:00 pm and 10:00 pm, the blood-alcohol level would be approximately .06 or .07 percent because of one less hour of burn off.

After Corbin testified, the prosecutor indicated he had no further witnesses. Defense counsel stated he was making a Penal Code section "1118.1 motion." Defense counsel contended that the prosecution had failed to show the corpus delicti of the crime absent the extrajudicial statements of defendant. He argued that there was no observed driving by the officer or the other witnesses and no evidence supporting an inference of driving. The court denied the "1118" motion on the basis that there was sufficient evidence in the testimony of Officer Foss that he touched the hood of defendant's car and it indicated "very fresh movement of [the] vehicle," the location of the rest stop, and the fact there were very few other vehicles in the area. At this point, the trial court clarified that the prosecutor had rested his case-in-chief with respect to testimonial evidence only.

B.    *Defendant's Testimony*

Defendant testified that she was in the middle of a drive from Stanford University to Redding when she purchased the 18-pack as well as a 24-ounce can of Bud Light Lime at a convenience store in Williams, about 30 minutes from the rest stop. She drank the entire 24-ounce can and threw it away while still at the store. She did not drink any of

5

the beer from the 18-pack until she arrived at the rest stop. Once there, she consumed four and a half beers before Officer Foss arrived 45 minutes to an hour later. In that time, she drank the first two cans, threw them away, went to the restroom, returned to her car, drank the next two cans, threw those away, went to the restroom again, and then saw Kirtley on the final return from the restroom. Defendant denied that she manipulated her headlights or turned on her engine after she arrived at the rest stop. She also said she had run out of gas and was not planning on continuing her trip to Redding that day. She stated she had spoken to her mother-in-law who lives in Chico, but did not specify what they had discussed.

Defendant admitted that she told Officer Foss that she drank in her car while driving from Stanford. She also admitted that she had been in an accident earlier that day and exchanged information with the other driver but had not reported the accident. She maintained she had not been drinking at the time of the accident.

C.   *Documentary Evidence*

After defendant testified, the defense rested its case as to witnesses, and the court indicated that the submission of testimonial evidence was now completed. The prosecution then offered, and the court admitted without objection, various exhibits, including records from the Department of Motor Vehicles (DMV) and the Department of Corrections. The court also admitted one defense exhibit. Then, the court stated that "all testimonial and documentary evidence that is going to be submitted has been submitted."

D.   *Procedural Background*

In March 2013, defendant was charged by information with driving under the influence of alcohol within 10 years of three other violations (§§ 23152, subd. (a)/23550—count 1); driving with a blood-alcohol level of .08 percent or higher within 10 years of three other violations (§§ 23152, subd. (b)/23550—count 2); driving under the influence of alcohol within 10 years of a prior DUI felony (§§ 23152, subd. (a)/23550.5, subd. (a)—count 3); and driving with a blood-alcohol level of 0.08

6

percent or higher within 10 years of a prior DUI felony (§§ 23152, subd. (b)/23550.5, subd. (a)—count 4). The complaint also alleged with respect to all counts that defendant had a blood-alcohol level of .15 percent or higher (§ 23578) and had served a prior prison term (Pen. Code, § 667.5, subd. (b)). Defendant waived her right to a jury trial.

On January 9, 2014, the court found defendant guilty on all counts and found true all allegations. On May 12, 2014, the court sentenced defendant to a total term of four years in prison; three years for driving under the influence of alcohol within 10 years of a prior DUI felony (count 3) plus one year for the prior prison term enhancement. The trial court stayed three-year sentences on each of the remaining counts pursuant to Penal Code section 654. The court also awarded presentence credit and imposed specified fines. Defendant appealed.

## II. DISCUSSION

### A. Standard of Review

As noted previously, defendant moved for acquittal under Penal Code section 1118.1. This statute, however, only applies to cases "tried before a jury." (Pen. Code, § 1118.1.) Here, defendant waived her right to a jury trial and the case was tried by the court without a jury. Accordingly, the relevant statute is Penal Code section 1118, which applies to cases "tried by the court without a jury" when a jury trial has been waived, and requires the court to "order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading after the evidence of the prosecution has been closed if the court, upon weighing the evidence then before it, finds the defendant not guilty of such offense or offenses." (Pen. Code, § 1118.) We apply the same analysis in reviewing a motion for acquittal under either statute. (See *People v. Ceja* (1988) 205 Cal.App.3d 1296, 1301, abrogated on another ground in *People v. Norris* (2002) 95 Cal.App.4th 475, 479.) And that standard is " 'the same as the standard applied by an appellate court in reviewing the sufficiency of the evidence to support a conviction, that is, "whether from the evidence, including all reasonable inferences to be drawn

7

therefrom, there is any substantial evidence of the existence of each element of the offense charged." ' [Citation.]" (*People v. Stevens* (2007) 41 Cal.4th 182, 200.)

We "review the whole record in the light most favorable to the judgment . . . to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578; accord *People v. Ceja, supra,* 205 Cal.App.3d at p. 1301.) "The focus of the substantial evidence test is on the *whole* record of evidence presented to the trier of fact, rather than on ' "isolated bits of evidence." ' " (*People v. Cuevas* (1995) 12 Cal.4th 252, 261, quoting *People v. Johnson*, *supra*, 26 Cal.3d at p. 577.) "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755.) In other words, " ' "[t]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citations.]' " (*People v. Castaneda* (2011) 51 Cal.4th 1292, 1322; accord *People v. Ceja, supra,* 205 Cal.App.3d at p. 1301.) This is the same in cases in which the People rely primarily on circumstantial evidence. (*People v. Bean* (1988) 46 Cal.3d 919, 932.) " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citation.]" (*Id.* at p. 933.)

B.    *Motion for Acquittal*

Defendant claims the trial court should have granted her motion to acquit because, at the end of the prosecution's case-in-chief, there was insufficient evidence of her guilt. Specifically, she argues the prosecution failed to show that her intoxication and blood-

8

alcohol level were achieved while driving, as opposed to at the rest stop. We disagree and find the necessary substantial evidence to support the judgment.

The People contend that defendant did not raise the sufficiency of the evidence issue below because she argued instead that the prosecution failed to show the corpus delicti of driving under the influence absent her extrajudicial statements. In support of their argument, the People cite to *People v. Jones* (1998) 17 Cal.4th 279, a decision of our Supreme Court finding that a defendant's argument that the trial court had erred in denying his motion for judgment of acquittal for insufficient evidence because the corpus delicti of his offense was not established was not cognizable on appeal where the motion did not raise the corpus delicti issue and instead relied upon the extra judicial statement in the trial court. (*Id.* at p. 299 & fn. 2.) "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant." (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169.) "The independent proof may be circumstantial and need not be beyond a reasonable doubt, but is sufficient if it permits an inference of criminal conduct, even if a noncriminal explanation is also plausible." (*Id*. at p. 1171.) Once this independent proof is submitted, the defendant's extrajudicial statements—in this case, that she had been drinking while driving—may be considered to strengthen the case. (*Ibid*.)

In the instant action, defense counsel moved to acquit on the basis that the prosecution failed to show the corpus delicti of the crime absent defendant's extrajudicial statements because without them there was insufficient evidence of driving while intoxicated. The difference between this corpus delicti argument and her current claim of insufficient evidence is slight. And, on this record, we will consider defendant's claim that the prosecution's case-in-chief failed to show that her intoxication and blood-alcohol

9

level were achieved while driving. Whether viewed in the context of her original motion or her brief on appeal, our analysis of the facts is essentially the same because we find that, even without defendant's extrajudicial statements, the prosecution's case-in-chief presented substantial evidence that defendant was driving while under the influence of alcohol.

The evidence that when the witnesses and Officer Foss found her defendant was under the influence of alcohol and her blood-alcohol level was well above the legal limit is overwhelming. The witnesses testified that defendant smelled of alcohol, appeared lethargic, and staggered and tripped as she walked. Officer Foss administered two preliminary blood-alcohol tests that showed defendant's blood-alcohol level was over .20 percent. He also conducted a series of field sobriety tests, and defendant's results were consistent with her being intoxicated.

The temperature of the hood of her car suggested she had also been driving recently. (Cf. *People v. Thompson* (2006) 38 Cal.4th 811, 819 [concluding officers had probable cause to arrest defendant for a DUI in part because officer "touched the Bronco's hood and concluded that it had been driven very recently"].) So did the fact that, when first seen by witnesses, defendant was in the driver's seat of her car manipulating her headlights, and then she got out of her car to throw away trash and use the restroom. She was also at a rest stop in a remote area with no obvious reason to stay for any length of time. It was reasonable to infer from this evidence that defendant had driven her car to the rest stop recently. Defendant would have us view the record in the light most unfavorable to the judgment and draw all inferences in her favor. This we cannot do.

The circumstantial proof of defendant's recent driving was sufficient on its own, and the overall case against defendant was further supported by Officer Foss's testimony that defendant told him she had started drinking at 4:00 or 5:00 p.m., was drinking while she was driving, and only stopped drinking shortly before she spoke to him. We can

10

hardly say that at the close of the prosecution's case-in-chief no rational fact finder could have found that defendant was under the influence of alcohol while she was actually driving.**3**

C.      *Sufficiency of Evidence That Defendant Drove Under the Influence of Alcohol and with a Blood-Alcohol Level of .08*

Section 23152 provides that it is unlawful for: (a) a person who is under the influence of alcohol or (b) who has a blood-alcohol level of .08 percent or higher to drive. Each of defendant's convictions was based in part on a violation of either subdivision (a) or (b). Defendant contends that, even considering her testimony, the prosecution failed to prove either beyond a reasonable doubt. Just as we found the evidence of defendant's guilt sufficient at the close of the prosecution's case-in-chief, we also find there is substantial evidence to support these convictions when reviewing the record as a whole.

Again, there is no question that defendant was under the influence of alcohol and had a blood-alcohol level of around .20 percent at the time Officer Foss administered his tests. Instead, defendant suggests that her testimony that she drank four beers at the rest stop in the 45 minutes to an hour after she stopped driving and before Officer Foss arrived weakens the assumption that she was under the influence of alcohol or had a blood-alcohol level of .08 percent or higher when she was still driving. It does not. Additionally, defendant's statement that the trial court found her testimony to be credible

---

**3** The parties dispute at what point we must take the evidence—when defendant's counsel made the motion to acquit or after the prosecutor closed his entire case-in-chief by introducing his documentary evidence. There is one piece of documentary evidence relevant to the sufficiency of the evidence regarding defendant's intoxication while driving—the DMV records indicating that defendant weighed 135 pounds. But these records are unnecessary to show that defendant was intoxicated while driving. Her blood-alcohol level was more than .20 percent when Officer Foss arrived, determined she had driven recently, and administered his tests. The sufficiency of the prosecution's case-in-chief does not turn on the weight of Corbin's testimony regarding how many beers were required for a person of this weight to reach this level of intoxication.

11

is overgenerous. The trial court rejected her explanation for her blood-alcohol levels and expressed uncertainty about where exactly her testimony was inaccurate: "You testified to what you testified to and I accept what you've testified to. But the bottom line is you cannot get to that blood alcohol level with that number of beers that were consumed. It just can't happen. So I don't find—well, I'm not going to say that your testimony is incredible because I find it to be credible, but I suspect that it's not full."

Her testimony is also contradicted by the two witnesses who were present at the rest stop for approximately 30 minutes of the 45 minutes to an hour defendant claims she was stopped. They did not witness her drink anything in those 30 minutes. Instead, they saw her throw away beer cans shortly after they arrived. Further, Officer Foss only found one empty beer can in the trash. These facts undermine defendant's theory that she consumed enough alcohol at the time she was at the rest stop to significantly alter her blood-alcohol level.

But even if we assume that the trial court found defendant's testimony that she drank four beers shortly before Officer Foss arrived to be credible, her extremely high blood-alcohol level at the time of his arrival was substantial evidence that she was also under the influence of alcohol and with a blood-alcohol level of .08 percent or higher when she was still driving. Corbin's testimony illustrates that drinking four beers simply could not account for defendant's blood-alcohol level.[4] Officer Foss testified that

---

[4] Defendant contends that Corbin's testimony is irrelevant because there was no evidence of how much defendant weighed at the time of the blood draw. As we noted earlier, the prosecution introduced DMV records indicating that defendant weighed 135 pounds. We are well aware that any difference in defendant's actual weight may have impacted the expert's testimony. (See *People v. Thompson, supra,* 38 Cal.4th at p. 826 [describing potential expert testimony extrapolating defendant's blood-alcohol level at an earlier point from later-taken results: " '[T]here are numerous variables such as weight, or time and content of last meal which may affect the rate at which the alcohol dissipates.' [Citations.]"].) But in this case the testimony regarding the difference between defendant's actual blood-alcohol level and the level that would have been

defendant told him she had started drinking at 4:00 or 5:00 p.m. and that she was drinking while she was driving. When the witnesses first observed defendant she already appeared to be so intoxicated that she could not walk without staggering and tripping. Viewing, as we must, the record as a whole in the light most favorable to the judgment, there was substantial evidence from which the trial court could find that defendant was under the influence of alcohol and had a blood-alcohol level of .08 percent or higher at the time she was still driving.

D.       *Sufficiency of Evidence That Defendant Drove with a Blood-Alcohol Level of .15*

The court also found true an allegation that defendant had a blood-alcohol level of .15 percent or higher. (§ 23578.) Defendant contends that this finding was not supported by sufficient evidence. We disagree. Officer Foss administered two tests starting at 9:18 p.m. that showed blood-alcohol levels of .211 and .208 percent, respectively. This was substantial evidence that defendant's blood-alcohol level was at least .15 percent when she was still driving only an hour earlier.

As with her previous claim, defendant's argument rests almost entirely on her assertion that she offered uncontroverted testimony that she drank more than four beers after she arrived at the rest stop.[5] Again, this evidence *was* contradicted and defendant's statement that her testimony that she drank more than four beers after driving was found credible oversimplifies the trial court's findings. As it noted, "the bottom line is we have

---

produced under various hypothetical scenarios involving the consumption of four beers was so stark that the possibility defendant's weight may have changed does not render the expert's testimony wholly irrelevant. (Cf. *People v. Warlick* (2008) 162 Cal.App.4th Supp. 1, 6 ["The fact that such extrapolations ' " 'can be speculative' " ' (goes to the weight rather than the admissibility of such testimony). [Citations.]"].)

[5] She also contends "the prosecution did not present any relevant evidence as to how much appellant would have had to drink, in order to reach a given blood alcohol level." But how much defendant had to drink in order to arrive at a blood-alcohol level of .15 percent or higher while driving is irrelevant. What is relevant is that she did.

13

a .21, a .20, and .019 [*sic*] [blood-alcohol concentration] from a criminalist." The consistency of these readings is striking in light of defendant's testimony. If the preliminary tests were accurate, her blood-alcohol level began *decreasing* shortly after the time defendant claims she had just completed drinking four beers. Thus, even if we assume the trial court found defendant's testimony that she drank four beers shortly before Officer Foss arrived credible, substantial evidence still supported its finding that due to the other alcohol defendant must have consumed earlier in order to reach these blood-alcohol levels at the time of Officer Foss's arrival, she was still above .15 percent during her recent drive. Accordingly, we must uphold the court's finding.

### E.    *Prior Violations*

Defendant also contends that her other felony DUI conviction was not a "prior violation" because it occurred after the current offense was committed. At the time of defendant's current violation and her sentencing, former section 23550.5, subdivision (a)(1), provided that "[a] person is guilty of a public offense, . . . if that person is convicted of a violation of Section 23152 . . . and the offense occurred within 10 years of . . . [a] prior violation of Section 23152 that was punished as a felony." This section was amended, effective January 1, 2015, to substitute the word "separate" for "prior." (§ 23550.5, subd. (a), as amended by stats. 2014, ch. 509, §1.) The People concede that the former rule was applicable in this case and that because the prior felony DUI alleged by the prosecution was committed and adjudicated in 2013, after the current offense was committed in 2011 (but before defendant was sentenced in 2014), it did not qualify as a "prior violation." We agree. (See *People v. Baez* (2008) 167 Cal.App.4th 197, 202 [distinguishing use of "prior violation" in section 23550.5, subdivision (a), with "having previously been convicted" in subdivision (b)].)

### III.  DISPOSITION

Defendant's convictions for driving under the influence of alcohol within 10 years of a prior DUI felony (count 3) and driving with a blood-alcohol level of 0.8 percent or

14

higher within 10 years of a prior DUI felony (count 4) are reversed. The judgment is affirmed in all other respects. The matter is remanded to the trial court for resentencing consistent with this opinion. The clerk of the superior court is then directed to prepare an amended abstract of judgment and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


/S/

---
RENNER, J.


We concur:


/S/

---
RAYE, P. J.


/S/

---
NICHOLSON, J.